UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


LON R. SWEENEY,                    )        CASE NO. 1:10CV1038
                                   )
                Plaintiff,         )        JUDGE SOLOMON OLIVER
                                   )        Magistrate Judge George J. Limbert
        v.                         )
                                   )
MICHAEL J. ASTRUE,                 )        REPORT AND
Commissioner of Social Security,   )        RECOMMENDATION OF
                                   )        MAGISTRATE JUDGE
                Defendant.         )


        This matter is before the Court on a motion for entry of judgment with remand under

sentence four of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) filed by

Defendant Michael J. Astrue, Commissioner of Social Security ("Defendant").  ECF Dkt. #s

15, 18[1].  Plaintiff Lon R. Sweeney ("Plaintiff") has filed opposition to the motion via a pro se

document captioned "Motion: Custody of Case to Remane[sic] in U.S. District Court for

Decesion[sic] with Cause."  ECF Docket # 16.  Plaintiff has also filed a document labeled

"Motion: Submit Evidence Orthapedice[sic] Records Evalution[sic] Total and Premenant[sic]

Disable[sic] with Cause."  ECF Dkt. #17.

        For the following reasons, the undersigned recommends that the Court GRANT

Defendant's motion (ECF Dkt. #18) and DENY Plaintiff's motions.  (ECF Dkt. #s 16, 17).

        On May 10, 2010, Plaintiff filed a complaint in this Court seeking judicial review of the

final decision of the Social Security Administration ("SSA") affirming a September 11, 2009

determination that he was not under a disability and therefore not entitled to Disability

---

        [1]  The undersigned notes that Defendant's November 17, 2010 original filing of this motion contained two
blank pages.  ECF Dkt. #15.  Defendant's December 1, 2010 filing is the same motion filed on November 17, 2010
but does not contain the blank pages so as to ensure for purposes of the record that the previously filed blank pages
did not have missing content.  ECF Dkt. #18.

Insurance Benefits ("DIB").  ECF Dkt. #1; ECF Dkt. #10-3 at 31.  Attached to his complaint, Plaintiff included letters that he had sent to the SSA indicating that some of the records that were relied upon in determining that he was not entitled to social security benefits were not his. ECF Dkt. #1-1.

On November 17, 2010, Defendant filed the instant motion to remand Plaintiff's case to the SSA pursuant to sentence four of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).  ECF Dkt. #15.  Defendant asserts that the Court should remand this case because the ALJ needs to make additional fact-finding by calling a vocational expert ("VE") to testify in order to discuss the impact that Plaintiff's nonexertional mental limitations have on the job base.  *Id.* at 2.  Defendant contends that the ALJ misapplied the regulations by failing to consult a VE before making a step five determination finding that Plaintiff could perform a number of jobs existing in significant numbers in the economy even though he had nonexertional mental limitations. *Id.*  Defendant cites to 20 C.F.R. Part 404, Subpart P, Appendix 2, section 200.00(e)(1) and Social Security Ruling ("SSR") 85-15 for support that an ALJ cannot rely upon the Medical-Vocational Guidelines when determining whether a person with nonexertional limitations is disabled.  *Id.*

Plaintiff asserts in opposition that he has no mental limitations and the only way that he can receive "positive results" is for his case to remain in this Court.  ECF Dkt. #16.  He also posits that Defendant had sufficient time within which to review his case and to delay his case with a remand may cause hardship to him because he has a "serious heart condition that could result in a[sic] untimely death."  *Id.*

In *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 175-176 (6th Cir. 1994), the Sixth Circuit held that remand of a case for further consideration under sentence four of 42 U.S.C. § 405(g) is the appropriate remedy "when the Secretary misapplies the regulations or when there is not substantial evidence to support one of the ALJ's factual findings and his decision therefore must be reversed."  The *Faucher* Court explained that"[u]nder sentence four,

the Court makes a final judgment, affirming, reversing, or modifying the Secretary's decision and may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Id*. at 175.

Section 200.00(e)(1) of 20 C.F.R. Part 404, Subpart P, Appendix 2 provides that the Guidelines "do not direct factual conclusions of disabled or not disabled for individuals with solely nonexertional types of impairments." 20 C.F.R. Part 404, Subpart P, Appendix 2 § 200.00(e)(1).  Moreover, Social Security Ruling 85-15 ("SSR 85-15") provides that "where a person has solely a nonexertional impairment(s), the tables rules do not direct conclusions of disabled or not disabled." ECF Dkt. #18 at 2, quoting SSR 85-15.  An ALJ may use the Guidelines only as a framework for decision-making when a claimant has solely nonexertional impairments and those nonexertional impairments significantly diminish the claimant's capacity to work. *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990).  "Reliance upon the grids in the presence of nonexertional limitations requires reliable evidence of some kind that the claimant's nonexertional limitations do not significantly limit the range of work permitted by [the claimant's] exertional limitations." *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).

Here, the ALJ's deliberation of Plaintiff's nonexertional mental impairments is inconsistent and unsupported.  The ALJ found that Plaintiff had severe mental impairements which required limitation to work involving simple, routine instructions and tasks, with only occasional interactions with coworkers, supervisors and the public, and no high production quotas or piece work.  ECF Dkt. #10-3 at 14.  The ALJ also found that those limitations "had little or no effect on the occupational base of unskilled work at all exertional levels." *Id.* at 13-14.  However, the ALJ provided no "reliable evidence of some kind that the claimant's nonexertional limitations do not significantly limit the range of work permitted by his exertional limitations." He had a VE testify at the hearing, but the ALJ presented the VE with a

hypothetical individual who had no mental limitations.  ECF Dkt. #10-4 at 33-36.  Therefore, no testimony was elicited as to whether the mental limitations that the ALJ found for Plaintiff significantly limited the occupational base of unskilled work.  Moreover, the ALJ had found at Step Two that Plaintiff's mental impairments "have caused significant limitations in his abilities to tolerate stress, task complexity, and to relate to others in the workplace," ECF Dkt. #10-3 at 9, but he nevertheless found without explanation or support at Step Five that these same limitations did not erode the occupational base.  ECF Dkt. #10-3 at 13.  The ALJ stated that he was using the Medical-Vocational Guidelines only as a framework for decision-making because SSR 85-15 prohibited the application of the Guidelines in cases involving solely nonexertional limitations.  ECF Dkt. #10-3 at 16-17.  But he provided no support except the Guidelines for his determination that the occupational base would not be significantly eroded by Plaintiff's mental limitations.  Accordingly, it appears that rather than using the Guidelines as only a framework, the ALJ actually erroneously applied the Guidelines to determine whether Plaintiff's nonexertional limitations impacted the occupational base.

For these reasons, the undersigned recommends that the Court GRANT Defendant's motion for entry of judgment with remand under sentence four of 42 U.S.C. § 405(g)(ECF Dkt. #18), and DENY Plaintiff's motion for this case to remain before this Court (ECF Dkt. #s 16).  Moreover, the undersigned recommends that the Court DENY Plaintiff's motion to submit unrelated orthopedic evidence into the record.  ECF Dkt. #17.

The undersigned also brings another issue in this case to the attention of the Court.  Plaintiff denies that he has any mental limitations.  ECF Dkt. #16.  At the hearing before the ALJ, Plaintiff testified as to a number of mistaken identity and stolen identity incidences that resulted in numerous difficulties, including missing medical records from the Veteran's Administration ("VA") on Plaintiff and the use of someone else's medical records in Plaintiff's file.  ECF Dkt. #10-4 at 6-9.  Plaintiff testified that someone stole his identity in 2008, and stole his disability pension, his benefits and his right to obtain treatment at the VA Hospital.  *Id*. at 9.

-4-

He stated that his identity was stolen three times and he also was the victim of mistaken identity.  *Id*.  He indicated that some of the information in his medical records before the ALJ were not his records, including the records regarding mental conditions.  *Id*. at 8-10.  He also stated that he was convicted for shooting someone and  served prison time due to a case of mistaken identity and he later had gotten that conviction overturned.  *Id*. at 8-10.

The ALJ questioned Plaintiff at the hearing about a VA report which indicated that Plaintiff served in the army in the 1980s and was stationed in the Phillipines where he was pinned in a hot zone and fell down and hurt his knee.  ECF Dkt. #10-4 at 11.  Plaintiff indicated that he was in the war to throw "Marcos" out of the Phillipines under a "covert operative operation."  *Id*.  Plaintiff explained: "society wouldn't know about that, but if you were military personnel in that time, you would, because some people were deployed from other places as well."  *Id*.  He testified that his rank in the military was "E4, promotable" and he was a combat engineer and demolitions expert.  *Id*.

The ALJ also questioned Plaintiff about another report in the file:

> ALJ:  Now, there's another phrase.  Then he added he was in Vietnam at the age of three, helping his grandfather and uncles as a sniper spotter.  Can you explain that?
>
> P:  Yes.  I was an experiment.  I have the paperwork at home to proof[sic] it.  It's being researched now.  They used me as an experiment.  I went to Vietnam twice, as a matter of fact; once at three and once at seven.  I was a POW and a MIA.  I was in combat with Don King, John Gotti, Benny Bonano (Phonetic), Carm Ragusio - o or Carmen Policy (Phonetic), as you all know him, and I was an - - they used me as an experiment.  They found out in Korea that kids were being used to kill soldiers, so the Vietnam - - my uncle, which is the - - as they call it, the Hill, which is the Senate and Congress, talked about this.  They used me as an experiment.

ECF Dkt. #10-4 at 12.  The ALJ asked Plaintiff's counsel to obtain paperwork regarding this testimony.  *Id*. When the ALJ asked whether he had been demoted in military rank for hitting an

"NCO," Plaintiff testified that he was demoted for marijuana use, not for hitting an "NCO."  ECF Dkt. #10-4 at 12.

-5-

Plaintiff also informed the ALJ that he had lung cancer.  ECF Dkt. #10-4 at 13.  He told the ALJ that a growth on his lung was found when he had a CT scan in May of 2009 which found fluid in his lung.  *Id.*  When the ALJ told Plaintiff's counsel to obtain those records, Plaintiff's counsel informed the ALJ that the CT scan from May of 2009 was in the file and she referred the ALJ to Exhibit 13F.  The ALJ found the CT scans and indicated that they said nothing about cancer.  *Id.* at 14.  Plaintiff's counsel responded that the ALJ was correct that the CT scans said nothing about cancer.  *Id.*  Plaintiff thereafter responded that:

> The way I was told about it, the Inspector General of the VA contacted me after they did the CT Scan because the fluid was in my lungs.  That's when he expressed to me that - - because I had known my identity had been stolen, and I put in a complaint about it.  But that's when he expressed, expressed to me that I had cancer, because they are medical doctors as well as Inspectors, too.  He was for the whole region.  He told me that they was positive it was cancer because of the fluid underneath- - in the lung and I had a growth on it.  That's when he told me that there was a criminal investigation being launched because my identity had been stolen.  They think there might have been a reason, because I was exposed to chemicals in there that could cause those type of disease.

*Id.*  The medical expert at the hearing thereafter interjected:

> If I may?  This is may - - maybe this isn't the time for me to say anything, but I noticed, in Exhibit 12F, which I just saw today for the first time, page 99 is a list of hospital admissions.  There is one September 6th, 2001.  You might want to take a look at the notation.  I didn't - - I don't think we have that record in page - - on, on those 90 - - in those 99 pages or in the 42 pages thereafter, in which is the only diagnoses that I've seen in the record.  Might, might explain a lot here, if it's - - if, if those are the records that are missing, and if there were some other records.

*Id.*  The diagnosis referred to by the medical expert is a diagnosis for schizophrenia, which indicates an admission date for this diagnosis on September 6, 2001 and a discharge date of September 11, 2001.  ECF Dkt. #10-16 at 42.

The ALJ thereafter questioned Plaintiff about his statement to an agency consultative physician that he was being investigated.  ECF Dkt. #10-4 at 16, citing ECF Dkt. #10-13 at 28.  Plaintiff explained that it must have been a miscommunication because he told the physician that the identity theft was being investigated.  ECF Dkt. #10-4 at 16.

-6-

Plaintiff's counsel thereafter questioned Plaintiff about the first identity theft and he explained the circumstances.  ECF Dkt. #10-4 at 16.  He indicated that he told the Cleveland VA that someone stole his VA benefits and they told him that they had a record that he was dead and using someone else's identity.  *Id*. at 16-17.  He filed a complaint with the VA.  *Id*. at 17.  Plaintiff further testified that a spot on his lung was identified in 1992 but the VA could not locate his medical record so that he could receive treatment for it and in 1998 or 1999, the spot had grown to the size of a quarter.  *Id*. at 17-18.  Plaintiff testified that the spot on his lung then became a growth in 2008 and his blood test results showed cancer.  *Id.* at 18.  He explained that the woman that he talked to at the VA asked him to come in and undergo more tests and the Inspector General called him to inform him that someone was using his identity which is why the VA never treated him for the spot on his lung.  *Id.*

Plaintiff also testified that the VA pulled the wrong teeth out of his mouth because they used someone else's records, and the VA had a medical record showing that he had four or five mental diagnoses that were not his. ECF Dkt. #10-4 at 19.  He testified that there was nothing wrong with him mentally and he thereafter put in a request with the VA to have his medical records, information and care transferred to a facility other than the VA.  *Id.*  Plaintiff mentioned that the disability that he received from the military was for physical ailments and not for any mental ailments.  *Id.*  Plaintiff did indicate that he suffered from some depression and anxiety after being fired from his job at the United States Post Office after he was assaulted by his supervisor and reported it.  *Id*. at 22-23.  Plaintiff reported that he had filed a case with the "Mail System Protection Board in U.S. Court" and that he had "paperwork for the special council that's supposed to go to the President of the United States so he can review it, because there were some other things there."  *Id*. at 23.

The medical expert thereafter testified at the hearing.  ECF Dkt. #10-4 at 26.  He mentioned that the record did not cover the time period at issue for Plaintiff's social security

claim very well.  *Id*.  He indicated that it was clear that Plaintiff was in the Domiciliary in 2000 at the VA for substance abuse and other things.  *Id*.  He called the ALJ's attention to an "interesting entry" in Exhibit 12F from September 6, 2001 on page 98 of Exhibit 12F.  *Id*. at 27. The entry is the diagnosis of schizophrenia.  ECF Dkt. #10-16 at 42.  The medical expert testified:

> It, it was a diagnoses[sic] that's very out of line, really, with all the other diagnosis[sic], which, which relate to his substance abuse and - - he's, he's been in and out of the VA and other places for substance abuse, so that - - now, if I just go by what's in the record, the only problem we have that can be documented, verified, and otherwise has been treated, is, is a 12/09, alcohol, cocaine, cannabis abuse and dependence, up to the year 2007.
>
> *       *       *
>
> The problem about this other diagnoses[sic] is, is puzzling for a number of reasons, because the VA records do indicate alcohol and cannabis and cocaine dependence and a personality disorder with borderline and paranoid features. So, I guess we can say at least we know there's a personality disorder with borderline and paranoid features.
>
> *       *       *
>
> But there's two choices here.  One is that that particular diagnoses[sic] might very well be in the right ballpark; not necessarily that particular diagnoses[sic], but something in that category.

> ALJ:  Um-hum.

> ME:  Another possibility is that there would be a more like a Munchausen situation, where certain things might be reversed.  For example, who's identity are we really talking about?  What about military service?  I would like to know more about his military service.  We don't have his military records.  But in a situation like this, I'd like to know - - from what he says, he must have been in a very special type of service, very special mission, very unusual, very atypical and I - - to the extent he feels he can talk about it, I would want to hear more about it, but not - - I don't know about here.  He described things that just don't happen in the military, and I don't understand how that, how that could - - I mean, I served in the military.  I was a military doctor.

> ALJ:  Um-hum.

ECF Dkt. #10-14 at 27-28.

The ME further testified as to Plaintiff's mental impairments:

> ME:  But I, I, I posed the two extremes.

> ALJ:  Yes.

> ME:  One would be that it's malingered and, and exaggerated for the purpose of whatever.  You know, whatever the purpose is.

-8-

ALJ:   Right.

ME:    The other would be that it's results of a much more serious psychiatric illness which has not been elaborated upon in the record that I received. Somebody might have thought of it at one time- -

ALJ:   Um-hum.

ME:    - - because there is that one entry.

ALJ:   Yes.

ME:    But we don't have that.  Now, the only thing I heard that made me think that maybe there's something there is when he talked about his service as a child.  Even his service in the Philippines sounds a little bit- - you know, he said there was a war - - well, maybe there was.  I don't know. I don't know what the U.S. did during - -

ALJ:   Um-hum.

ME:    - - during those times.  But he, he pieced together certain things that made it seem as if he was in a very special position.

ALJ:   Okay.

ME:    However, his description of what he alleges as a child is outright fantasy, in my opinion, or else it's just to throw us off.  Because if he really believes that, then somebody ought to be looking into that.

ECF Dkt. #10-14 at 32-33.

On October 1, 2009, Plaintiff's former counsel wrote a letter to the SSA requesting that Plaintiff's case be remanded for a new hearing.  ECF Dkt. #10-10.  Counsel urged the SSA to listen to the recording of the hearing.  *Id*.  She noted that based upon the ME's testimony and Plaintiff's testimony at the hearing, unresolved issues remain regarding Plaintiff's mental conditions.  *Id*.  Counsel also noted that Plaintiff was unable to obtain a complete record from the VA.  *Id.*

Based upon the lack of a complete record, as well as Plaintiff's testimony and the ME's testimony at the hearing, the undersigned recommends that the Court remand this case for additional fact-finding, and perhaps a consultative examination of Plaintiff, relating to

Plaintiff's mental impairments beyond the impairments of substance abuse and personality disorder.

Dated: December 8, 2010                                        _____*/s/George J. Limbert*_____
                                                               GEORGE J. LIMBERT
                                                               United States Magistrate Judge


    ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).